**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JAMES M. LEWIS,                                    :
                                                   :
      Plaintiff,                               :         Civil Action No.:      14-0401 (RC)
                                                   :
      v.                                       :         Re Document Nos.:    4, 6
                                                   :
UNITED STATES OF AMERICA,                          :
                                                   :
      Defendant.                               :

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANT'S MOTION TO DISMISS & DENYING AS MOOT PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff James Lewis ("Mr. Lewis"), proceeding *pro se*, brings suit against the United

States of America ("Defendant") under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80

("FTCA").  Mr. Lewis received a bad conduct discharge from the U.S. Marines in 1971, which

was administratively changed to a general discharge in 1974.  In the decades that followed, Mr.

Lewis has repeatedly sought to upgrade his discharge to honorable, bringing a number of civil

suits and filing multiple petitions for extraordinary relief with the Court of Appeals for the

Armed Forces ("CAAF").  At the heart of this latest action is Mr. Lewis's belief that under

CAAF rules, he was entitled to designated counsel to aid him in seeking extraordinary relief

from that court.

Mr. Lewis first claims that an employee of the Office of the Judge Advocate General of

the Navy ("JAG") willfully misrepresented the law when he stated that Mr. Lewis was only

eligible for appointed counsel as to the first appeal of his conviction.  Second, Mr. Lewis claims

that the employee's failure to designate counsel after Mr. Lewis filed a petition for extraordinary

relief in August 2012 was contrary to CAAF rules and negligent.  As a consequence of both the

willful misrepresentation and negligent failure to appoint counsel, Mr. Lewis claims to have

suffered emotional distress, and he seeks $750,000,000 in damages from the United States under

the FTCA.  Now before the Court are Defendant's motion to dismiss both claims pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Mr. Lewis's motion for summary

judgment.  For the reasons set forth below, the Court will grant Defendant's motion to dismiss

both claims for lack of subject-matter jurisdiction, and will deny Mr. Lewis's motion for

summary judgment as moot.

## II.  FACTUAL ALLEGATIONS

Mr. Lewis enlisted in the United States Marine Corps ("USMC") in 1968.[1]  *See Lewis v.*

*Sec'y of the Navy*, 892 F. Supp. 2d 1, 2 (D.D.C. 2012).  On May 22, 1970, Mr. Lewis was

convicted at a general court-martial for assault with a deadly weapon, disrespect, striking a non-

commissioned officer, and making threats.  *Id.*  He received a bad conduct discharge effective

August 27, 1971.  *Id.*  In September 1972, Mr. Lewis's court-martial conviction was reversed

due to a jurisdictional defect for failing "to specify the name of the judge who was requested to

try the case."  *Id.* at 3 (quoting *Lewis v. United States*, 45 C.M.R. 937, 937 (C.M.A. 1972).  In

1974, the USMC reinstated Mr. Lewis to the rank of Private First Class, and his bad conduct

---

[1]     In its motion to dismiss, Defendant's factual background section briefly discusses Mr. Lewis's military career and the many cases that he has filed pertaining to the end of that career, citing prior opinions of this Court, the U.S. Court of Federal Claims, and the CAAF.  *See* Def.'s Mot. Dismiss at 3–5, ECF No. 4.  Because the Court finds that the prior cases help to provide a clearer factual and procedural background – the accuracy of which Mr. Lewis does not dispute – the Court incorporates these facts with citations to the pertinent prior opinions, all of which are a matter of public record.

discharge was retroactively changed to a general discharge under honorable conditions "for convenience of the government." *See Lewis v. United States*, 99 Fed. Cl. 772, 774 (2011).

From 1983 to the present, Mr. Lewis has filed a number of administrative and civil claims concerning the 1974 decision to give him a general discharge.[2]  He believes that he should have been given the opportunity to present materials before he was retroactively assigned a general discharge in 1974.  *See* Mr. Pinson's Letter to JAG, Pl.'s Ex. C at 6, ECF No. 1-1 (describing Mr. Lewis's belief that the discharge procedures violated military law).[3] Accordingly, Mr. Lewis filed a petition for extraordinary relief in the nature of a writ of error *coram nobis*[4] with the CAAF on October 11, 2011.  *See* Def.'s Mot. at 4; Compl. at 5.  The CAAF dismissed Mr. Lewis's petition for lack of jurisdiction on February 7, 2012.  *Lewis v. United States*, No. 12-8015/NA, 2012 CAAF Lexis 131, at *1 (C.A.A.F. Feb. 7, 2012).  Mr.

---

[2]     *See Lewis v. Sec'y of the Navy*, 892 F. Supp. 2d 1, 2–4 (D.D.C. 2012) (describing Mr. Lewis's 1983, 1984, 1987, and 2008 petitions to the Naval Discharge Review Board, as well as his suits filed in the District of Columbia and Court of Federal Claims); *Lewis v. United States*, 99 Fed. Cl. 772 (2011); *Lewis v. United States*, 27 Fed. Cl. 104 (1992); *Lewis v. Sec'y of the Navy*, No. 89-cv-1446, 1990 WL 454624 (D.D.C. June 29, 1990).

[3]     Mr. Lewis attached six exhibits to his complaint—exhibits that his complaint and subsequent motion for summary judgment reference explicitly.  *See generally* Compl., ECF No. 1.  This Court may consider the contents of exhibits attached to a complaint without converting a motion to dismiss into one for summary judgment.  *See Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada*, 158 F.R.D. 6, 7 (D.D.C. 1994) (holding that where a complaint makes express reference to attachments that are central to the plaintiff's claims, those documents may be considered on a motion to dismiss without converting it into a motion for summary judgment)).

[4]     The writ of error *coram nobis* is "an extraordinary tool to correct a legal or factual error" that "should not be granted in the ordinary case."  *United States v. Denedo*, 556 U.S. 904, 912–13, 917 (2009) (internal quotation marks omitted); *see also* Black's Law Dictionary 388 (9th ed. 2009) (defining the writ of error *coram nobis* as "[a] writ of error directed to a court for review of its own judgment and predicated on alleged errors of fact").

Lewis then filed a petition for reconsideration of the February 2012 decision, and he turned to

Representative Emanuel Cleaver for assistance in obtaining appointed counsel.

On May 16, 2012, the JAG Office of Legislative Affairs fielded a question from the

office of Representative Cleaver on behalf of Mr. Lewis, who is one of the Representative's

constituents.  *See* E-mail to Rep. Cleaver, Pl.'s Ex. A at 1, ECF No. 1-1.  Commander Damian

Flatt replied via e-mail that same day, writing:

> I have reviewed the documents and can provide some options to Rep. Cleaver's
> constituent.  As you know he intends to petition the Court of Appeals for the Armed
> Forces (CAAF) to reconsider a petition that was dismissed.  As far as CAAF is concerned
> there is no case in controversy at this point.  Accordingly, there is no right to counsel.
> The Navy could still provide counsel but either Mr. Lewis or Rep. Cleaver on his behalf
> would best be served by requesting assistance of counsel from the Judge Advocate
> General.

*Id.*; Compl. at 5.  Mr. Lewis then asked Representative Cleaver to forward his request to JAG.

Compl. at 5.  Meanwhile, on May 21, 2012, the CAAF denied Mr. Lewis's request for

reconsideration.  *Lewis v. United States*, No. 12-0815/NA, 2012 CAAF Lexis 604 (C.A.A.F.

May 21, 2012).

On June 19, 2012, Colonel J.R. Ewers ("Col. Ewers"), Assistant JAG, responded to

Representative Cleaver in a letter written from the JAG headquarters in Washington, D.C.  *See*

Compl. at 1, 5; Letter from Col. Ewers, Pl's Ex. B at 4, ECF No. 1-1.  After noting that the

CAAF had already denied Mr. Lewis's petition for reconsideration and that Mr. Lewis was now

seeking counsel to aid him in appealing the decision to the Supreme Court, Col. Ewers wrote:

> On September 13, 1972, when the Court of Military Appeals set aside his conviction, Mr.
> Lewis's court-martial was final and conclusive, pursuant to Article 76, UCMJ and Rule
> for Courts-Martial 1209.  Although Article 70, Uniform Code of Military Justice (UCMJ)
> provides that an accused is entitled to the appointment of counsel while his case is under
> appellate review, this right is limited to first appeals.  *United States v. Brooks*, 66 M.J.
> 221 (C.A.A.F. 2008).  There is no conviction or punitive discharge for Mr. Lewis to
> appeal and therefore there is no statutory authority for the Navy Judge Advocate General

to appoint an attorney to represent Mr. Lewis in his planned post-appellate review appeal to the Supreme Court.

Letter from Col. Ewers, Pl's Ex. B at 4. Mr. Lewis contends that Col. Ewers's statement that the right to appointed counsel under Rule 70 is limited to first appeals is a "willful misrepresentation of the C.A.A.F.'s analysis," because an accused has the right to effective representation during "the entire period of review following trial." *See* Compl. at 5.

Mr. Lewis filed another petition with the CAAF on August 6, 2012, this time seeking a writ of mandamus[5] and grant of review out of time. *See* Compl. at 3. The CAAF clerk provided notice of Mr. Lewis's filings to the JAG, *id.*; Docketing Notice, Pl.'s Ex. D at 8, ECF No. 1-1, but the CAAF did not assign counsel to Mr. Lewis before denying his petition on August 24, 2012. *See Lewis v. United States*, No. 12-8031/MC, 2012 CAAF Lexis 966 (C.A.A.F. Aug. 24, 2012). Mr. Lewis contends that Col. Ewers's failure to assign him appellate counsel on or after August 6, 2012, violated CAAF Rule 17 and was negligent, causing him "garden variety emotional distress." Compl. at 6.

On August 14, 2013, Mr. Lewis filed a claim with the Tort Claims Unit of the Department of the Navy, alleging that Col. Ewers's negligent failure to designate counsel and his willful misrepresentation of the law caused Mr. Lewis personal injury in the form of emotional distress, and he sought $750,000,000 in damages under the FTCA. *See* Compl. at 2; FTCA Compl., Pl.'s Ex. E at 10–17, ECF No. 1-1. The Department of the Navy dismissed Mr. Lewis's claim on January 23, 2014, stating that it analyzed the claim and determined that the United

---

[5] A writ of mandamus is "[a] writ issued by a court to compel performance of a particular act by a lower court or a governmental officer or body, usu[ally] to correct a prior action or failure to act." Black's Law Dictionary 1046–47 (9th ed. 2009)

States was not liable under the FTCA for the damages claimed.  Decision Letter, Pl.'s Ex. F at 19, ECF No. 1-1.  Mr. Lewis responded by filing this suit on March 13, 2014.

### III.  ANALYSIS

#### A.  Legal Standards

##### 1.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F.Supp.2d 172, 176 (D.D.C.2004).

Because subject-matter jurisdiction focuses on a court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required in deciding a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim.  *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the Court is not limited to the allegations contained in the complaint when considering a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.  *See Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).  However, a court considering a motion to dismiss for lack of jurisdiction must construe the plaintiff's complaint in the plaintiff's favor, accepting all inferences that can be derived from the facts alleged.  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C.Cir.2005).

### 2.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

### 3.  The Federal Tort Claims Act

"The United States is immune from suit absent an express waiver of its sovereign immunity."  *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991).  The FTCA is such a waiver, authorizing claims for damages against the United States in response to certain tortious actions of government employees, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

To state an actionable FTCA claim over which this Court has subject matter jurisdiction, a plaintiff must establish a claim that is:

> [1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C.Cir.2003) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).

Because the FTCA constitutes a waiver of sovereign immunity, it must be "strictly construed, in terms of its scope, in favor of the sovereign," and the party bringing suit against the government "bears the burden of proving that the government has unequivocally waived its immunity."  *Id.* (internal quotation marks omitted).

### B.  Willful Misrepresentation

In his complaint, Mr. Lewis alleges that Col. Ewers willfully misrepresented the applicable law in his letter to Congressman Cleaver when discussing whether Mr. Lewis was entitled to appointed counsel under CAAF precedent.  *See* Compl. 5.  Specifically, Mr. Lewis takes issue with the following language in Col. Ewers's letter:  "Although Article 70, Uniform

Code of Military Justice (UCMJ) provides that an accused is entitled to the appointment of counsel while his case is under appellate review, this right is limited to first appeals. *United States v. Brooks*, 66 M.J. 221 (CAAF 2008)." Compl. at 5 (quoting Letter from Col. Ewers, Pl.'s Ex. B at 4). Mr. Lewis asserts that in this sentence and citation, Col. Ewers willfully misrepresented the applicable CAAF precedent "to cause the Claimant emotional distress," and he seeks recovery for his distress under the FTCA. *See* FTCA Compl., Pl.'s Ex. E at 13.

Defendant argues that this Court lacks jurisdiction to hear Mr. Lewis's willful misrepresentation claim against the government because 28 U.S.C. § 2680(h) excludes from the purview of the FTCA "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights."[6] 28 U.S.C. § 2680(h) (emphasis added). The Supreme Court has interpreted § 2680(h) broadly, stating that it "comprehends claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961). Therefore, the FTCA does not waive sovereign immunity for willful misrepresentation claims, and such claims are "properly dismissed by the district court against [] government defendants." *Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 948 (D.C. Cir. 1975).

---

[6]      Mr. Lewis complains that Defendant's motion to dismiss raises arguments for the first time that were not raised administratively in the Navy's rejection of his FTCA claims, and he asserts that "there cannot be any *de novo* review based on their new affirmative defense allegations." *See* Pl.'s Reply to Def.'s Mot. to Dismiss at 3–4, ECF No. 9-1. Mr. Lewis is mistaken. The argument that a court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 512 (D.C. Cir. 2009) (explaining that in an FTCA case, the government's failure to argue below that no local law analog exists does not forfeit the argument because it goes to subject-matter jurisdiction).

Mr. Lewis, however, asserts that 10 U.S.C. § 1054(e) provides an exception to § 2680(h) that allows his misrepresentation claim to go forward.  Section 1054(e) provides that 28 U.S.C. § 2680(h) "shall not apply to a cause of action arising out of a negligent or wrongful act or omission in the provision of legal assistance."  10 U.S.C. § 1054(e).  Mr. Lewis contends that by knowingly misrepresenting the applicable law in his letter, Col. Ewers committed a wrongful act in the provision of legal assistance that is actionable under § 1054(e).  *See* Pl.'s Reply to Def.'s Mot. to Dismiss at 3, ECF No. 9-1.[7]  Even assuming that Col. Ewers did misrepresent the law in his letter, however, Mr. Lewis has offered no authority to support his assertion that Col. Ewers's misrepresentation to Representative Cleaver qualifies as a wrongful act "in the provision of legal assistance" for which Mr. Lewis can recover under § 1054.

Section 1054, titled "Defense of Certain Suits Arising out of Legal Malpractice," was enacted by Congress as part of the National Defense Authorization Act, Pub. L. 99-661, Title XIII, § 1356, 100 Stat. 3997 (Nov. 14, 1986).  According to the Conference Report, § 1054 provides "for the United States to defend and be the exclusive defendant in a *legal malpractice claim* against a lawyer acting in the scope of employment with the Department of Defense." H.R. Rep. No. 99-1001 (1986) (Conf. Rep.), *reprinted in* 1986 U.S.C.C.A.N. 6529, 6602 (emphasis added).  The Report further notes that although the Senate bill included no similar provision, the Senate receded because the "provision is not intended to create a new cause of action," but "is merely intended to provide protection for Department of Defense lawyers similar to [the medical malpractice protection] provided for [government] doctors in [10 U.S.C § 1089]."

---

[7]      Mr. Lewis mailed a copy of his opposition to Defendant's motion to dismiss to the Defendant, but he never filed a copy with this Court.  As a consequence, the opposition is available electronically only because Defendant has attached a copy of Mr. Lewis's opposition to its reply.

*Id.*; *United States v. Smith*, 499 U.S. 160, 170 n.11 (1991) (explaining that § 1054 "was enacted to shield Defense Department attorneys from [personal liability for] claims of legal malpractice").[8]

It is thus clear that § 1054 allows injured parties to pursue certain legal malpractice claims against the government without running afoul of the FTCA's exception for claims premised on negligent or wrongful misrepresentations. *See Devlin v. United States*, 352 F.3d 525, 536 (2d Cir. 2003) (recognizing that § 1054 exempts legal malpractice claims from the FTCA's misrepresentation exception); *Mossow by Mossow v. United States*, 987 F.2d 1365, 1371 (8th Cir. 1993) (same). To the extent that Mr. Lewis seeks to pursue a claim for legal malpractice based on Col. Ewers's alleged misrepresentation of the law, § 2680(h) would not bar the claim. Mr. Lewis's complaint, however, expressly states that his claim is not one for legal malpractice. Compl. at 4; FTCA Compl., Pl.'s Ex. E at 16. He goes on to explain that his decision not to pursue a legal malpractice claim was based on the fact that "there was never an attorney client relationship formed with the plaintiff and [Col. Ewers]." *Id.* Under local law,[9] this admission is fatal.

---

[8] *See also* Major Pottorff, *Reserve Component Judge Advocates' Authority to Provide Legal Assistance Services*, Army Law., Feb. 1991, at 91 ("Section 1054 is the judge advocate's malpractice insurance policy. It is intended to provide substitution of the United States as the defendant in any legal malpractice case arising from the actions of legal personnel acting within the scope of their duties."); Thomas J. Feeney & Captain Margaret L. Murphy, *The Army Judge Advocate General's Corps, 1982-1987*, 122 Mil. L. Rev. 1, 57 (1988) ("[N]ew malpractice legislation was enacted on November 14, 1986."); Lieutenant Col. Richard H. Gasperini & Captain Chester Paul Beach, Jr., *Legislative Protection Against Legal Malpractice Actions*, Army Law, Feb. 1987, at 25 ("Like the Gonzalez Act, section [1054] effectively immunizes DOD legal service providers from personal liability by making an action against the United States under the Federal Tort Claims Act (FTCA) the exclusive remedy available for legal malpractice.").

[9] The parties both assume that the acts or omissions at issue occurred in the District of Columbia and the District's law controls. The Court accepts the parties' assumption and

A plaintiff claiming legal malpractice in the District must allege: (1) that the attorney owed the plaintiff a duty of care; (2) the attorney breached that duty; and (3) a causal relationship exists between the breach and the harm complained of. *See Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009). However, "[b]efore an attorney can have a duty to a client, there must be an attorney-client relationship." *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 53 (D.D.C. 2009) (applying District of Columbia law); *see also Biomet Inc.*, 967 A.2d at 664 (finding that plaintiff had established the first element of a legal malpractice claim because the parties had an attorney-client relationship, and the defendant "owed a duty to [the plaintiff] based on that relationship"); *Smith v. Haden*, 872 F. Supp. 1040, 1044, 1053 (D.D.C.1994) (stating that plaintiff must establish the existence of an attorney-client relationship in order to sustain a legal malpractice suit in the District of Columbia). Accordingly, because Mr. Lewis admits that no attorney-client relationship existed, he cannot sustain a claim for legal malpractice under the tort law of the District of Columbia. *See, e.g.*, *Smith*, 872 F. Supp. at 1044.

Furthermore, in the absence of a viable claim for legal malpractice, Mr. Lewis has failed to show that § 1054(e)'s waiver of sovereign immunity is applicable to this case. Accordingly, under § 2680(h), Mr. Lewis's willful misrepresentation claim is not cognizable under the FTCA.[10] This Court therefore dismisses Mr. Lewis's willful misrepresentation claim for want of subject-matter jurisdiction.

---

proceeds on that basis. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions *sua sponte*.").

[10]     Because this Court finds that § 1054 waives sovereign immunity as to certain claims of legal malpractice, and Mr. Lewis does not bring such a claim, the Court need not go on to consider whether Mr. Lewis has identified District tort law that would make a private person liable to him for willfully misrepresenting the law in a letter to a third-party. Nevertheless, the Court notes that Mr. Lewis's reliance on D.C. Code § 2-381.09 to establish tort liability under

## C. Failure to Designate Counsel

Mr. Lewis further alleges that Col. Ewers negligently failed to assign him appellate legal counsel as required by CAAF Rule 17 after he filed a petition for writ of mandamus and grant of review out of time on August 6, 2012. *See* Compl. at 3, 6; FTCA Compl., Pl.'s Ex. E. at 13–14. Rule 17, titled "Assignment of Counsel," states that "[i]n a case involving a petition for extraordinary relief wherein an accused has been denominated as the real party in interest by a filing party or has been so designated by the Court, the Judge Advocate General shall . . . designate appellate military counsel to represent such accused." CAAF Rule 17. Because the JAG failed to designate him counsel to pursue his August 2012 CAAF petition, Mr. Lewis maintains that Rule 17 was violated and that it caused him emotional distress for which the United States is liable. Defendant protests that establishing a violation of a federal rule or regulation, without identifying an analogous duty imposed under District of Columbia tort law, is not enough to state a cause of action cognizable under the FTCA. *See* Def.'s Mot. Dismiss at

---

District of Columbia law is clearly misplaced. Section 2-381.09 criminalizes behavior that is in no way analogous to Col. Ewers's alleged acts, and it does not create tort duties. The section provides for imprisonment and fines payable to the District for the knowing presentation of a false "claim upon or against the District," if that claim is made or presented "to any officer of employee of the District of Columbia government." *See* D.C. Code § 2-381.09; D.C. Code § 2-381.01 (defining "claim" as "[a]ny request or demand, whether under a contract or otherwise, for money or property"). Mr. Lewis accuses Col. Ewers of misrepresenting the law, not making a false claim against the government for money or property. And even if Col. Ewers had violated § 2-381.09, the criminal code provision still does not provide for civil liability to individuals. *See Hornbeck*, 569 F.3d at 510 (requiring that local law make a private person "liable to the claimant"). Thus, § 2-381.09 provides no basis for finding the government liable for the alleged misrepresentation at issue under local tort law. And given Mr. Lewis's failure to allege that he acted or failed to act in reliance on Col. Ewers's alleged misrepresentation, his claim fares no better when analyzed as a common law claim of fraudulent misrepresentation. *See In re Estate of McKenney*, 953 A.2d 336, 342–43 (D.C. 2008) (identifying the five elements of common law fraudulent misrepresentation as: "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." (internal quotation marks omitted)).

10–11. Defendants therefore argue that the negligent failure to designate counsel claim must be dismissed.[11] The Court agrees.

The FTCA waives the United States' sovereign immunity "only to the extent that a private person in like circumstances could be found liable in tort under local law." *Art Metal-USA, Inc. v. United States*, 753 F.2d 1151, 1157. Accordingly, negligent non-performance of a duty created by a federal regulation can give rise to an FTCA claim only if local tort law recognizes an analogous duty. *Id.* ("It is true that negligent performance (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but *only* if there are analogous duties under local tort law."); *see also Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) ("Violations of federal law—when not accompanied by any local law violation—cannot support a suit under the FTCA."). "If there is no local law under which a private person would be liable *to the claimant* in accordance with the law of the place where the act or omission occurred, sovereign immunity has not been waived." *Hornbeck*, 569 F.3d at 510 (emphasis supplied and internal quotations omitted).

Mr. Lewis relies on two D.C. Code provisions to show that local law recognizes analogous duties to those at issue. The first is D.C. Code § 11-2602, which provides that District of Columbia courts shall appoint counsel for indigent criminal defendants who are facing a loss of liberty if the "Constitution or any other law requires the appointment of counsel." D.C. Code

---

[11]     Although the Defendant argues that Mr. Lewis's failure to identify a local law analog results in failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the D.C. Circuit has explained that because the FTCA waives sovereign immunity only as to claims where the government would be liable under local law, and because that waiver is "coextensive with the district court's subject matter jurisdiction to hear the case," the government's "arguments against [a plaintiff's] proposed local analogs" actually go to the Court's subject-matter jurisdiction. *See Hornbeck*, 569 F.3d at 512; *see also* Fed. R. Civ. P. 12(b)(1) (governing motions to dismiss for "lack of subject-matter jurisdiction").

§ 11-2602.  Mr. Lewis asserts that like CAAF Rule 17, § 11-2602 "provides for appointment of legal counsel in these circumstances."  Pl.'s Reply at 6.  The second code D.C. code provision on which Mr. Lewis relies is § 1-623.25, which governs misbehavior at proceedings before the Mayor and states that if an individual disobeys or resists a lawful order in proceedings before the Mayor or the Mayor's representative, he can face the same punishment as if he had committed contempt of court.  D.C. Code § 1-623.25.  Mr. Lewis analogizes § 1-623.25 to 10 U.S.C. § 892 of the UCMJ, which provides that a person who fails to obey a lawful order or regulation "shall be punished as a court-martial may direct."  10 U.S.C. § 892.  Thus, Mr. Lewis reasons, he has established a cognizable claim for negligent failure to appoint counsel in violation of CAAF Rule 17.

As Defendant correctly points out, however, neither D.C. Code provision is applicable to Mr. Lewis's situation.  Section 11-2602 states that certain indigent defendants are afforded the right to appointed counsel, but only "where a person faces a loss of liberty," and the "defendant or respondent . . . is financially unable to obtain counsel."  D.C. Code § 11-2602; *see also Wu v. United States*, 798 A.2d 1083, 1089 (D.C. 2002) ("Generally, there is no constitutional or statutory right to the appointment of counsel to pursue collateral relief after the direct appeal.").  Mr. Lewis was in the position of a petitioner, not a defendant or respondent, when he sought extraordinary relief from the CAAF, and he has not alleged that his liberty was at stake in those proceedings.  As to § 1-623.25, it has no bearing on a court's failure to appoint counsel as directed by § 11-2602; it applies only to those who disobey lawful orders in proceedings "before the Mayor or his or her representative," and violations of the section give rise to contempt hearings, not to tort liability to individuals.  *See* D.C. Code § 1-623.25.

Mr. Lewis has thus failed to identify any analogous tort duties under District of Columbia law that the USMC might have breached by failing to appoint him counsel under CAAF Rule 17. Given that Mr. Lewis is proceeding in this matter *pro se*, however, the Court will look beyond those D.C. Code provisions cited by Mr. Lewis to determine whether an analogous common law duty might supply the relevant local tort law to allow his FTCA claim to proceed.  In particular, the Court will consider whether Mr. Lewis's claim of negligent failure to appoint counsel in violation of Rule 17 could constitute negligence *per se* or negligent infliction of emotional distress under local law.

The District recognizes the common law tort theory of negligence *per se*, which allows a plaintiff in certain circumstances to "rely on a statute or regulation as proof of the applicable standard of care.  Proof of an unexplained violation of that standard renders the defendant negligent as a matter of law, so long as the violation was the proximate cause of the injuries, and the alleged injuries were of the type which the statute was designed to prevent." *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996) (internal quotation marks and citations omitted).  "At a minimum, however, the statute or regulation relied on must promote public safety and have been 'enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred.'" *Id.* at 579 (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 557 (1993)).

In this case, the regulation in question provides for the designation of counsel in certain circumstances where an accused requests extraordinary relief from the CAAF.  *See* CAAF Rule 17.  Mr. Lewis does not argue, and the language of the regulation does not show, that Rule 17 bears any relationship to the promotion of public safety.  Additionally, the injury that Mr. Lewis claims to have experienced as a consequence of Col. Ewers's violation of Rule 17 is "garden variety emotional distress."  Compl. at 6.  Nothing in the language of the Rule or in Mr. Lewis's

filings indicates that Rule 17 was designed to prevent that type of injury.  Thus, Mr. Lewis has not shown that the government would be liable for negligent failure to designate counsel under the common law theory of negligence *per se*.

To recover on a claim for negligent infliction of emotional distress in the District of Columbia, a plaintiff must be able to allege either that he "was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety," *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990), or that he had a relationship with the defendant "of a nature that necessarily implicates the plaintiff's emotional well-being," that there was an "especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff," and that the defendant did in fact cause such distress, *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011) (explaining that most relationship-based claims arise "in the context of doctor-patient relationships").

Mr. Lewis has alleged nothing to suggest that Col. Ewers's negligence placed him in a zone of physical danger, or that he had any relationship with the Colonel that implicated his emotional well-being.  *Compare id.* at 812 n.39 (explaining that "not all relationships will give rise to a duty to avoid negligent infliction of emotional distress," and that to do so, the relationship must implicate the plaintiff's emotional well-being) *with* Compl. at 4 (disavowing the existence of any attorney-client relationship in this case).  Thus, Mr. Lewis has not shown that, taking his claims as true, the government would be subject to tort liability for failing to appoint him counsel under a theory of negligent infliction of emotional distress.

Finally, the Court notes that Mr. Lewis may not rely on the "general duty of one who undertakes an action to act with due care," to state an actionable claim under the FTCA where the core of his claim is that the government failed to exercise due care in abiding by its own rules

Case 1:14-cv-00401-RC   Document 12   Filed 03/18/15   Page 18 of 18

and regulations. *See Hornbeck,* 569 F.3d at 509. Plaintiffs may not circumvent the FTCA's local law requirement by "merely re-label[ing] a violation of a federal statute as [a] common law claim[]," of general negligence. *Id.* And Mr. Lewis has failed to show that "a private person guilty of similar malfeasance would be liable under local law." *Id.* at 510.

Because Mr. Lewis's negligent failure to designate counsel claim is predicated solely on the violation of a duty established by federal regulations, and because neither Mr. Lewis's filings nor the Court's own consideration of this issue revealed any analogous tort duty under local law, the Court concludes that Mr. Lewis has failed to state a claim actionable under the FTCA. As a consequence, this Court lacks subject-matter jurisdiction over the claim and must dismiss it.[12]

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Mr. Lewis's complaint for lack of subject-matter jurisdiction and denies Mr. Lewis's motion for summary judgment as moot. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Date:  March 18, 2015

RUDOLPH CONTRERAS
United States District Judge

---

[12] Defendant also argues that the Court lacks jurisdiction over Mr. Lewis's claims pursuant to the *Feres* doctrine. *See Feres v. United States,* 340 U.S. 135 (1950) (holding that where the claimants were servicemen injured or killed while on active duty due to the negligence of others in the armed forces, they could not seek recovery under the FTCA for injuries sustained that arose out of or were incident to their military service). Although the Court has serious doubts about the applicability of the *Feres* doctrine to Mr. Lewis's claims, because the Court finds that Mr. Lewis has failed to state a cognizable FTCA claim giving rise to subject-matter jurisdiction, it will not address the merit – or lack thereof – of Defendant's *Feres* argument.